DOC NO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
2017 MAR 14 AM 8:58

PAUL D. AMMERMAN,
    Plaintiff,

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

**17 C 193 wmc**

Civil Action No.: _____

- v -

Dr. SINGLETON, Psychologist at New Lisbon Correctional Inst. (NLCI),
Mr. MURPHY, Psychologist at NLCI,
Captain CRAPSTER, Security Captain at NLCI,
Security Director LARRY FUCHS, Security Director at NLCI,
Lieutenant Sika, Lt. who signed the retaliatory conduct report at NLCI,
Individually, Personally and/or in their Official Capacity,
    Defendants.

---

## CIVIAL COMPLAINT PURSUANT TO 42 U.S.C. § 1983.

---

### I. JURISDICTION AND VENUE

1.    This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has Jurisdiction under 28 U.S.C. Section 1331 and 1342 (a)(3). Plaintiff Ammerman seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff Ammerman's claims for injunction relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rule of Civil Procedures.

2.    The Western District of Wisconsin is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3.    Plaintiff Ammerman is mentioned herein a prisoner of the State
      of Wisconsin in the custody of the Wisconsin Department of
      Corrections. Previously located at New Lisbon Correctional Institution
      and then moved to his current location of Columbia Correctional
      Institution.

## III. DEFENDANTS

4.    Defendant, Dr. Singleton (first name never given) is a psychologist
      who is located at New Lisbon Correctional Institution.

5.    Defendant, Mr. Murphy (first name never given) is a psychologist
      who is located at New Lisbon Correctional Institution.

6.    Defendant, Captain Crapster (first name never given) is a security
      captain who is located at New Lisbon Correctional Institution,
      responsible for all individuals in the restrictive housing
      unit (RHU/Segregation). He was also the one who was taking over
      security while Security Director Larry Fuchs was on vacation.

7.    Defendant, Security Director Larry Fuchs who is the security
      director for New Lisbon Correctional Institution. Responsible in
      determining the dispositions for all conduct reports and the one
      responsible for the authorization for Special Needs Placement
      (SPN) classifications. He is also the one responsible for training
      other employees when dealing with the safety and security of the
      Institution.

8.    Defendant, Lieutenant Sika (first name never given nor the
      plaintiff can be sure that is his correct name from the conduct
      report) is the Lieutenant who signed Conduct Report #2616542.

## IV. STATEMENT OF CLAIMS

9.    On or around 4-12-16 at New Lisbon Correctional Institution,
      Defendant Mr. Murphy violated the Plaintiff's Eighth Amendment
      rights prohibiting "cruel and unusual punishment" by being deliberately
      indifferent and delaying his mental needs, when the Plaintiff

informed him that he was previously diagnosed with certain personality disorders and needed help the plaintiff was ignored.

10. On or around 6-3-16 at New Lisbon Correctional Institution, Defendant Mr. Murphy violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying his mental needs, when the Plaintiff informed him that he was previously diagnosed with certain personality disorders and needed help the Plaintiff was ignored.

11. On or around 6-15-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying his mental needs, when the Plaintiff informed him that he was previously diagnosed with certain personality disorders and needed help the Plaintiff was ignored.

12. On or around 6-20-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying his mental needs, when the Plaintiff informed him that he was previously diagnosed with certain personality disorders and needed help the Plaintiff was ignored.

13. On or around 6-27-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying his mental needs, when the Plaintiff informed him that he was previously diagnosed with certain personality disorders and needed help the Plaintiff was ignored.

14. On or around 6-27-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by torturing the Plaintiff into believing that he was going to get medication for his problems, which he knew the Plaintiff was not going to

get because Dr. Singleton did not refer medication for the Plaintiff.

15.   On or around 6-28-16 at New Lisbon Correctional Institution, Defendant
      Security Director Larry Fuchs violated the Plaintiff's Eighth Amendment
      rights prohibiting "cruel and unusual punishment" by being
      deliberately indifferent and delaying his mental needs, when the
      Plaintiff brought this issue to his attention, Larry Fuchs failed to
      prevent this and further violations.

16.   On or around 6-29-16 at New Lisbon Correctional Institution,
      Defendant Dr. Singleton violated the Plaintiff's First Amendment
      rights by retaliating against the Plaintiff's Inmate Complaint, when
      the Plaintiff had a First Amendment right to use the Inmate Complaint
      System without fear of retaliations. Dr. Singleton violated this by
      issuing a conduct report (#2616542) because of the complaint against
      him (complaint #NLCI-2016-13494).

17.   On or around 6-29-16 at New Lisbon Correctional Institution, ►
      Defendant Security Director Larry Fuchs violated the Plaintiff's
      First Amendment rights by authorizing a conduct report (#2616542)
      to be issued against the Plaintiff in retaliation for the complaint
      that the Plaintiff filed (#NLCI-2016-13494), and it was his
      responsibility to authorize any conduct reports given to inmates,
      and the Plaintiff had a First Amendment right to file complaints
      without fear of retaliations.

18.   On or around 6-29-16 at New Lisbon Correctional Institution,
      Defendant Security Director Larry Fuchs violated the Plaintiff's
      Fourteenth Amendment rights of "due process" by manipulating the
      Conduct Report System by allowing the third "threat" Conduct Report
      be given as a Minor disposition (after a Conduct Report was given 6
      days prior for the same offense), so the Plaintiff could not call
      witnesses.

19.   On or around 6-29-16 at New Lisbon Correctional Institution,
      Defendant Lieutenant Sika violated the Plaintiff's First Amendment
      rights by retaliating against the Plaintiff, because the Plaintiff
      used his rights to use the Inmate Complaint System (complaint
      #NLCI-2016-13494), and then issued a conduct report (#2616542)
      because of that complaint.

20.   On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Lieutenant Sika violated the Plaintiff's Fourteenth Amendment rights of "due process" by manipulating the Conduct Report System by allowing and signing the third threat conduct report be given as a minor disposition (after a conduct report was issued for the same offense 6 days prior), so the Plaintiff could not call witnesses.

21.   On or around 6-26-16 at New Lisbon Correctional Institution, Defendant Captain Crapster violated the Plaintiff's Fourteenth Amendment rights of "due process" by manipulating the Conduct Report System by allowing the third threat conduct report be given as a minor disposition (after a conduct report was issued for the same offense 6 days prior), so the Plaintiff could not call witnesses.

22.   On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Fourteenth Amendment rights of "due process" by manipulating the Conduct Report System by writing and signing the third threat conduct report be given as a minor disposition (after he issued a conduct report for the same offense 6 days prior), so the Plaintiff could not call witnesses.

23.   On or around 7-5-16 at New Lisbon Correctional Institution, Defendant Captain Crapster violated the Plaintiff's First Amendment rights by knowing and allowing Dr. Singleton to write a conduct report (#2616542) in retaliation to the Plaintiff's complaint (#NLCI-2016-13494), after the Plaintiff explained verbally that Dr. Singleton was retaliating with the conduct report, when Captain Crapster was filling in for Security Director Fuchs at the time.

24.   On or around 7-12-16 at New Lisbon Correctional Institution, Defendant Security Director Larry Fuchs violated the Plaintiff's First Amendment rights by transferring the Plaintiff to another institution and changing his classification in retaliation to the Plaintiff's complaint against Dr. Singleton and PSU (#NLCI-2016-13494).

25. On or around 7-12-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's First Amendment rights by transferring the Plaintiff to another institution and changing his classification in retaliation to the Plaintiff's complaint (#NLCI-2016-13494).

26. On or around 7-12-16 at New Lisbon Correctional Institution, Defendant Captain Crapster violated the Plaintiff's First Amendment rights by transferring the Plaintiff to another institution and changing his classification in retaliation to the Plaintiff's complaint (#NLCI-2016-13494).

## V. EXHAUSTION OF REMEDIES

**Exhaustion of remedies for Deliberate Indifference of Previously Diagnosed Mental Needs:**

27. On or around 6-26-16 the Plaintiff writes to psu's supervisor to try to get help for his previously diagnosed conditions, and that Dr. Singleton and Mr. Murphy refuses/denies to treat, and that Dr. Singleton teased the Plaintiff by saying that everyone at New Lisbon is depressed. Dr Singleton responded to this request on 6-27-16. Plaintiff tried to contact the PSU's supervisor due to the fact that in order to submit an inmate complaint the Plaintiff must first use the chain of command in an attempt to resolve the issue.

28. On or around 6-27-16 the Plaintiff wrote to Security Director Larry Fuchs to inform him that PSU seems to want to delay to correct a mental imbalance, but was told to "Please continue to work with clinical staff here at NLCI." Again, this is an attempt to exhaust the chain of command before submitting an inmate complaint.

29. On or aound 6-28-16 the Plaintiff wrote an inmate complaint stating that he believed Psychological Service Unit (PSU) was being deliberately indifferent to his previously diagnosed mental needs.

30. On or around 6-29-16 the complaint was acknowledged and received. This complaint was given the complaint number #NLCI-2016-13494.

31.   On or around 7-14-16 S. Goodman an Inmate Complaint Examiner
      recommended that complaint #NLCI-2016-13494 be dismissed without
      contacting the inmate.

32.   On or around 7-28-16, K.Kallas Reviewing Authority dismissed
      the complaint and did notify the Plaintiff of this decision.

33.   After receiving the notice of the dismissed complaint, the
      Plaintiff then appeals this decision to madison.

34.   On or around 8-8-16 the complaint was received in Madison by
      the Corrections Complaint Examiner (CCE), and on 8-9-16 the
      complaint was acknowledged.

35.   On or around 9-28-16, the Plaintiff received notification that
      the CCE requested an appeal extension.

36.   On or around 9-29-18 B. Hompe the CCE recommends that the complaint
      be dismissed, but was never investigated, but according to the
      DOC-404 form; this was never investigated.

37.   On or around 9-29-16, C. O'Donnell--Office of the secretary
      dismissed the complaint.

**Exhaustion of remedies for the Retaliation to an Inmate Complaint
by Conduct Report.**

38.   On or around 7-6-16, the Plaintiff tries to write to the Security
      Director Larry Fuchs about Conduct Report #2616542, but was
      informed by Captain Crapster that the security director was
      out of the institution and to try to contact him the following
      week. This was an attempt to exhaust the chain of command
      before submitting an inmate complaint.

39.   On or around 7-11-16, the Plaintiff wrote up an inmate complaint
      stating that Dr. Singleton wrote a Conduct Report #2616542 in
      retaliation to a First Amendment right  in other words words
      against the Plaintiff's complaint (#NLCI-2016-13494) from
      6-28-16.

40.   On or around 7-11-16, the Plaintiff's complaint was acknowledged
      and was given the complaint number NLCI-2016-14408.

41. On or around 8-28-16, 8 days after the 30 business day requirement for investigation for any complaint, the Plaintiff contacts ICE here at Columbia Correctional Institution to see what the decision in this matter.

42. On or around 8-28-16, the Plaintiff writes up a complaint appeal. The Plaintiff then sends this appeal to Madison so that he will not be time barred. The cce office time stamps that they received the appeal on 9-1-16.

43. On or around 8-28-16, the ICE wrote back with the decision showing that the complaint was rejected. Special Note: Inmate Contacted-NO.

44. On or around 8-31-16, the Plaintiff completes a Request For Review of Rejected Complaint and sends that form to NLCI.

45. On or around 9-6-16, The Plaintiff receives notice from the Warden at NLCI that the Request for Review was received and acknowledge. Also on this date Warden D. Strahota dismissed the appeal.

**Exhaustion of remedies for the Retaliation by Transferring the Plaintiff to Another Institution.**

46. On or around 7-18-16, the Plaintiff wrote an Inmate Complaint against PSU transferred him in retaliation for complaint #NLCI_ 2016-13494. On this date the complaint was not accepted because the Plaintiff forgot to sign the complaint, and was commanded to contact Ms. Fait.

47. On or around 7-19-16, the Plaintiff wrote to Ms. Fait, who decided to not respond.

48. On or around 7-21-16, the Plaintiff signs and returns the complaint to ICE.

49. On or around 7-22-16, the Plaintiff informs ICE that he did attempt to contact Ms. Fait. I. Hart returns that Interview Request form stating, "Noted" dated on 7-25-16.

50. On or around 7-25-16, L. Alsum ODonovan returns the complaint.

The complaint was returned because the ICE states that carbon copy complaints do not scan clearly.

51.   On or around 7-27-16, for the third time the Plaintiff attempts to exhaust his remedies, and submits an inmate complaint.

52.   On or around 7-28-16, the ICE acknowledges and receives the complaint They also assign this complaint to number CCI-2016-15922.

53.   On or around 8-12-16, the ICE S. Goodman rejects the complaint, and again they did not contact the Plaintiff of this fact.

54.   On or around 8-16-16, the Plaintiff writes up a Request for Review of Rejected Complaint, and sends it to Warden Dittmann for review.

55.   On or around 8-22-16, the Rejected Appeal was acknowledged and received. I am still waiting for the results as of today.

## Exhaustion of Remedies by Appealing the Conduct Report #2616542

56.   On or around On 6-29-16, the Plaintiff was issued a Conduct Report for "threats" and was assigned the number #2616542, which was also the same day that inmate complaint #NLCI-2016-13494 was acknowledged.

57.   On or around 6-29-16, the Plaintiff informs C.O. Hoffman that the Plaintiff did not "threaten" anyone and had witnesses. The Plaintiff informs C.O. Hoffman that the witnesses name is Philip Novak (Exhibit-4 is a declaratory statement). Also, the Plaintiff informed C.O. Hoffman that the Plaintiff wished for a hearing, or to fight the ticket.

58.   On or around 6-29-16, LT. Sika decided that the Plaintiff was guilty and made the ticket a minor disposition. Meaning that the Plaintiff was not going to have a hearing.

59.   On or around 7-5-16, the Plaintiff wrote to Captain Crapster about the minor conduct report and how that they did not follow policy and procedures pursuant to DOC 303. Captain Crapster admitted that, "several factors are taken to determine what is offered as a sanction (IE) CR history." If they followed that policy then the third conduct report for "threats" should have also been a Major offense because the second conduct report for that same

was a Major.

60. On or around 7-6-16, the Plaintiff files an appeal of a contested hearing.

61. On or around 7-7-16, NLCI time stamps that they received the appeal.

62. On or around 7-12-16, the Plaintiff gets transferred to Columbia Correctional Institution.

63. On or around 7-18-16, the Plaintiff writes to security asking for a decision on the appeal. The Plaintiff did not get a response.

64. On or around 7-24-16, the Plaintiff writes to security again asking for a decision on the appeal. The Plaintiff did not get a response.

65. On or around 7-28-16, the Plaintiff receives the decision on the appeal. The appeal was denied.

**Exhaustion of Remedies by Appealing the Parole Review Committee Decision.**

66. On or around 7-5-16, the Plaintiff sees PRC to determine if he warrants a transfer, and according to the new minor ticket they decided that it was justified.

67. On or around 7-8-16, the Plaintiff files a DOC-1292 an Administrative Review of Initial Classification (IC) or Re-Classification (RC) Decision, and sends it to Madison.

68. On or around 7-27-16, they rejected this complaint/appeal. They informed the Plaintiff that the jurisdiction of the inmate, and to use the Inmate Complaint System.

## VI. FACTS

69 First and foremost, the Plaintiff apologizes because he is embarrassed and ashamed of his mental illness and may have problems explaining his issues properly. In addition, to these mental illnesses, he has a low grade point average in high school and a very limited educations that followed.

70. On or around 9-19-2007, psychologist Paul Grady informs Patty Doerr (Plaintiff's parole agent at that time) that the Plaintiff may have "Sociopathic Tendencies" during his assessment of the Plaintiff.  (Exhibit-5)

71. On or around 1-15-2008 the Plaintiff enters into therapy with Paul Grady until or around 4-19-2012.

72. On or around 6-18-2010, the Plaintiff meets and sets up an appointment with Department of Corrections Regional 7 psychologist Dr. John Morrell.

73. On or around 5-15-2012, Paul Grady informs Agent Doerr that the Plaintiff has "Marginal Antisocial Personality Disorders."

74. On or around 5-15-2012, Dr. John Morrell informs Agent Doerr that he also agrees that the Plaintiff does have personality disorders, furthermore, Dr. Morrell states that the Plaintiff is avoidant and possibly depressed and dwells on his abandonment.

75. On or around 5-25-12, Dr. Morrell informs Agent Doerr that the Plaintiff clearly has Personality Disorders and appears depressed.

76. On or around 1-31-13, the Plaintiff enters into custody then into prison.

77. On or around 4-12-16, the Plaintiff writes to PSU at New Lisbon Correctional Institution with concerns about problems with his Personality Disorders. During the session Mr. Murphy gives the Plaintiff a packet relating to anger management. The Plaintiff informs Mr. Murphy that he has been previously diagnosed with Personality Disorders, Sociopathic tendencies, and depression. Also, the Plaintiff informs Mr. Murphy that he believes that his aggression stems from his anxiety (personality disorders), Sociopathic tendencies, and depression. The Plaintiff asks Mr. Murphy if there were some kind of medicine that would help him with his depression or other psychological problems, but those issues were ignored. During this session Mr. Murphy gives the Plaintiff an anger management packet. The Plaintiff tries to explain to Mr. Murphy that a packet is not going to help if there is a chemical imbalance that maybe present in the Plaintiff. The Plaintiff asks Mr. Murphy if there is some sort

of medication to help with his anxiety and depression, thus, keeping his aggression low, but Mr. Murphy explains that he wished that there was medication for anger. The Plaintiff pleads with Mr. Murphy for medication for his anxiety and depression, which the Plaintiff believes his anger stems from. (Exhibit-1)

78.     On or around 4-27-16, again the Plaintiff tries to get help for his mental needs, and wrote to PSU. The Plaintiff tries to explain that his anger issues "may be linked to my depression + anxiety problems." The Plaintiff was informed to contact Dr. Reynolds and to read the anger management packet. Also on this date, the Plaintiff sends an Interview Request to Dr. Reynolds, but did not get a response.

79.     On or around 4-28-16, the Plaintiff writes to PSU for information on the anger management packet, and to ꟷ inform them in writing that he has been previously diagnosed with personality disorders.

80.     On or around 4-29-16, the Plaintiff met with Denise Romanow, but the first thing Ms. Romanow informs the Plaintiff was that this was her last day. The Plaintiff asks her to define that meaning, and she informs the Plaintiff that she really cannot do anything for him. This angers the Plaintiff, because it clearly shows PSU is just trying to go through the motions without trying to help. Even in Ms. Romanow's own clinical report she admits that the Plaintiff presented reports indicating that the Plaintiff has previously diagnosed ꟷꟷꟷ conditions from Dr. Morreél. Ms. Romanow states, "He presented material from another source and I informed him that I would not interpret the information as I was not the writer of the report." (Exhibit-2)

81.     On or around 6-3-16, again the Plaintiff contacts PSU and requests help for his previously diagnosed conditions, but Mr. Murphy responds that "This is the first request I have received from you." (Exhibit-3) This is clearly a lie as shown in Exhibit-1, but he sets up an appointment. Again in that session, Mr. Murphy ignores his pleas for medication for his anxiety and depression.

82.     On or around 6-6-16, the Plaintiff once again contacts PSU,

but he was on a hospital trip for his broken elbow. In the letter to PSU he informs them explaining his loss of his long-time Pastor and his mental anguish. In addition, he informs PSU that he has had a long history of batteries; in hopes that he will get the medication for his anxiety and depression, because he believes that his aggression stems from the frustration to his previously diagnosed conditions.

83.   On or around 6-15-16, the Plaintiff writes to PSU to reschedule the appointmant he missed while he was away in the hospital.

84.   On or around 6-20-16, Dr. Singleton had a face to face with the Plaintiff. During the face to face, the Plaintiff informs Dr. Singleton about his issues and his previously diagnosed conditions. Dr. Singleton gets belligerent and states that his diagnosis is the only ones that really matters. The Plaintiff tries to inform him of his previously diagnosed depression, but Dr. Singleteon responds, "Everyone at New Lisbon is depressed." The Plaintiff gets upset and explains that maybe if mentally ill people on the streets got help things like Sandy Hook or Aurora would never have happened. Dr. Singleton then asks the Plaintiff what someone in prison would do because there are no guns here. The Plaintiff gives a hypothetical senerio about weaker prison guards. Dr. Singleton then asks, "like who?" The Plaintiff names a few female gaurds.

85.   On or around 6-20-16, the Plaintiff was taken into custody and placed in Temporary Lockup Unit and given a conduct report for "threats." The Plaintiff was given a Major disposition for "threats" because on 3-11-16 the Plaintiff was issued a conduct report for the same offense. That previous conduct report was assigned the number #2808247.

86.   On or around 6-24-16, the Plaintiff complains to the Security Director Larry Fuchs, that PSU was not helpiing and asking him for an intervention, but the Security Director only states, "Please continue to work with clinical staff here at NLCI." that response was dated on 6-28-16.

87.   On or around 6-24-16, Dr. Singleton enters form DOC-3473 into

the Plaintiff's psychological folder, which is a Psychological Services Clinical Contact form. In this report his (Dr. Singleton) diagnosis reflects the Plaintiff's previously diagnosed condition: Antisocial Personality Disorder. Dr. Singleton signed this diagnosis on 6-22-16, and his supervisor signed it it on 6-24-16.

88.    On or around 6-26-16, the Plaintiff again writes to PSU for help from the Supervisor, but Dr. Singleton responds. Dr. Singleton responds, "If you would like medication submit a blue request slip to HSU." This upsets the Plaintiff, because he did not understand why "Dr." Singleton could not give medication, further-more, the Plaintiff was upset because he believed that this was not a Health Service problem, but a psychological problem.

89.    On or around 6-28-16, the Plaintiff writes a complaint against Dr. Singleton and the PSU staff for being deliberately indifferent and delaying his mental needs. This complaint was assigned the number #NLCI-2016-13494, and was acknowledged on 6-29-16.

90.    On or around 6-28-16, the Plaintiff was in the segregation recreation area with multiple other inmates. The Plaintiff saw Dr. Singleton making his rounds and replied to Philip Novak that Dr. Singleton was the one who made up a Conduct Report (#2616541), and that the Plaintiff only received 15 days in seg.

91.    On or around 6-29-16, the Plaintiff writes to Health Service Unit (HSU) to plead for help. Dr. Reynolds finally responds that there is no indication for a medication referral, which means Dr. Singleton did not give a referral, even though Dr. Singleton's own diagnosis shows the Plaintiff has Antisocial Personality Disorders, and Dr. Singleton was the one who informed the Plaintiff to contact HSU if the Plaintiff wanted medication. With this in mind, this lack of help further angers the Plaintiff into believing that Dr. Singleton was making fun of him and feeding fuel to his mental needs and torturing the Plaintiff mentally.

92.    On or around 6-29-16, Dr. Singleton decides to write up a Conduct Report against the Plaintiff, in which the Plaintiff

believes is in retaliation for the inmate complaint, which was
acknowledged on this same date (Exhibit-6 and 7). When Correctional
Officer Hoffman came to the Plaintiff's door he asked if the Plaintiff
wanted to make a statement. The Plaintiff clearly states in his
statement that, "Inmate Novak is my witness." The conduct report
was for "threats", and the Plaintiff also stated that he filled
out an inmate complaint against Dr. Singleton. Later the Plaintiff
receives a declaratory statement from inmate Philip Novak (Exhibit-
4). Also later on this date, a Correctional Officer gives the
Plaintiff the disposition without a hearing. Lt. Sika determined
that this should be made as a Minor instead of a Major conduct
report. According to DOC 303.68(e), there are factors that the
officers must consider. Captain Crapster confirmed this policy, when
he responded to the Plaintiff's Interview Request form. The Plaintiff
believes that because he received a conduct report for the same
offense 6 days prior and that prior conduct report was a Major, then
the same should have been said for this new conduct report. The
Plaintiff believes that this was  a way that Lt. Sika and the other
defendants could by-pass the hearing requirements for any Major
conduct reports. They knew I had a witness, and they knew I did
not "threaten" anyone. They assigned the conduct report with the
number #2616542. Also during the time following Dr. Singleton
requested for a Special Placement Needs (SPN) be applied to the
Plaintiff. Again the Plaintiff believes is also in retaliation
to his complaint against Dr. Singleton (#NLCI-2016-13494).

93. On or around 7-12-16, the Plaintiff ended up being transferred
from New Lisbon Correctional Instittution, changed his
classificaiton, and sent him to Columbia Correctional Institution.

94. During the time following the Plaintiff attempts to exhaust his
administrative remedies, but the Inmate Complaint Examiner violated
their own policies and tries to block his attempts. see Paragraph
27-68.

## VII. LEGAL AUTHORITIES

95. **Deliberate Indifference:**

96   Deliberate Indifference to Medical/Mental Needs, see:
Estelle v.Gamble, 429 U.S. 104; Farmer v. Brennan, 511 U.S.
825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1984); McGill v.
Duckworth, 944 F.2d 344, 351 (7th Cir. 1991); Hill v. Dekalb
Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994);
Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997);
Chapman v. Kelner, 241 F.3d 842, 845 (7th Cir. 2001); Wynn
v. Southward, 251 F.3d 588, 593 (7th Cir. 2001); Proffitt v.
Ridgeway, 279 F.3d 503, 506 (7th Cir. 2002); Brock v. Wright,
315 F.3d 158 (2nd Cir. 2003); Collins v. Seeman, 462 F.3d 757,
760 (7th Cir. 2006); Townsend v. Fuchs, 522 F.3d 765; Jett
v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Goebert v.
Lee County, 510 F.3d 1312, 1329 (11th Cir. 2007).

**Retaliation:**

97.   Retaliation against inmate Complaints, see:
Mawhinney v. Henderson, 542 F.2d 1, 3 (2nd Cir. 1976); Babcock
v. White, 102 F.3d 267, 275 (7th Cir. 1996); Wolff v. McDonnell,
418 U.S. 539; Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir.
2000); Dewarlt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000);
Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002); William
v. Seniff, 342 F.3d 774, 782 (7th Cir. 2003); Szymankiewicz
v. Picard, 2004 ₪ U.S. Dist Lexis 7895.

**Punitive Damages:**

98   Punitive Damages Intended to Punish Violaters and to Prevent
Future Violations, see:
Smith v. Wade, 461 U.S. 30, 51 (1983); Soderback v. Burnett
County, 752 F.2d 285, 289-91 (7th Cir. 1985); Williamson v.
Handy Button Machine Co., 817 F.2d 1290 (7th Cir. 1987); Marshall
ex rel. Gossens v. Teske, 284 F.3d 765, 772 (CA7 1992); Barbour
v. Merrill, 310 U.S. App. D.C. 419, 48 F.3d 1270, 1277 (D.C.
Cir. 1995); Merriweather v. Family Dollar, 103 F.3d 576 (7th
Cir. 1996); Hill v. Shobe, 93 F.3d 418, 421 (7th Cir. 1996);
Hardeman v. City of Albuquerque, 377 F.3d 1106, 1120-21 (CA10
2004); Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2621 (2008);
Shelby v. Gelios, 287 Fed Appx. 526 (2009).

**Due Process:**

99.   Inmates Rights to have a Hearing or Call Witnesses, see: Wolff v. McDonnell, 418 U.S. 539, 558; Hayes v. Walker, 555 F.2d 625.

100.  Due Process violations from lack of Hearing on Conduct Reports, see: Department of Corrections 303 (Considerations for a Major Conduct Report); Department of corrections 310 (Inmate Complaint Procedures).

## VIII. RELIEF

WHEREFORE, THE Plaintiff respectfully prays that this Court enter judgment:

101.  Granting Plaintiff Ammerman a declaration that the acts and omissions describe herein violates his rights under the Constitution and Laws of the United States, and

102.  A preliminary and permanent injunction ordering PSU to seek the medical needs of the Plaintiff, and

103.  Plaintiff seeks an injunction asking this Court to order the Department of Corrections to change the rules dealing with the rights of inmates to a fair hearing with all conduct reports. This way the DOC will not make a conduct report a minor in an effort to by pass the rights of an inmate to a hearing or to call witnesses.

104.  Plaintiff seeks an injunction asking this Court to order the Department of Corrections to change the policy on informing inmates of rejected complaints, when an inmate uses the Inmate Complaint System. So the inmate is not time barred.

105.  Plaintiff seeks an injunction asking this Court to order the Department of Corrections to remove conduct report #2616541 and/or conduct report #2616542, because both were retaliatory tools against the Plaintiff.

106.  The Plaintiff asks for a large amount in Punitive Damages to

to prevent the Department of Corrections from violating inmate rights in the future. Also, to punish and make an example to others who would be deliberately indifferent to medical/mental needs, or for those who fail to provide the mentally ill inmates the help they so desperately need. This will also change the policies of the Department of Corrections when dealing with the rehabilitation of individuals.

107.  Plaintiff seeks Punitive Damages in the amount of $100,000 agaist Mr. Murphy for violating the Plaintiff's Eighth Amendment rights against "cruel and unusual punishment" by being deliberately indifferent and delaying mental needs, on or around 4-12-16, when the Plaintiff plead for help with his mental illness previously diagnosed by two clinicians.

108.  Plaintiff seeks Punitive Damages in the amount of $100,000 against Mr. Murphy for violating the Plaintiff's Eighth Amendment rights against "cruel and unusual punishment" by being deliberately indifferent and delaying mental needs, when during a face to face session and the Plaintiff brought these issues to his attention; Mr. Murphy ignored those previously diagnosed conditions.

109.  Plaintiff seeks Punitive Damages in the amount of $100,000 against Mr. Murphy for violating the Platiff's Eighth Amentment rights against "cruel and unusual punishment" by being deliberately indifferent and delaying mental needs, from on or around 6-3-16, when the Plaintiff plead for help with his mental illness previously diagnosed by two clinicians, and then laying about the request being the "first request I have received from" the Plaintiff.

110.  Plaintiff seeks Punitive Damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against "~~cxxis arxi~~-cruel and unusual punishment" by being deliberately indifferent in delaying mental needs, from on or around 6-15-16, when the Plaintiff plead for help with his mental illness previously diagnosed by two clinicians.

111.  Plaintiff seeks punitive Damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against "cruel and unusual punishment" by in delaying

mental needs, from on or around 6-20-16, when Dr. Singleton had
a face to face consultation, and ignored the Plaintiff's plea for
help with his mental illness prevously diagnosed by two clinicians.
In addition, Dr. Singleton ignored those pleas after the Plaintiff
informed him that he was previously diagnosed.

112.  Plaintiff seeks Punitive Damages in the amount of $100,000 against
Dr. Singleton for violating the Plaintiff's Eighth Amendment
rights against "cruel and unusual punishment" by being deliberately
indifferent and delaying mental needs, from on or around ~~6-27-16~~
6-27-16, when the Plaintiff plead for help with his mental illness
previously diagnosed by two clinicians.

113.  Plaintiff seeks Punitive Damages in the amount of $100,000 against
Dr. Singleton for violating the Plaintiff's Eighth Amendment
rights against "cruel and unusual punishment" from on or around
6-27-16, by torturing the Plaintiff into thinking he was going
to get medical help for his mental needs when he told the Plaintiff
that if he wanted medicine to contact HSU; well knowing he was not
going to get the relief for his previously diagnosed depression,
antisocial personality disorder, and/or sociopathic tendencies,
because Dr. Singleton was not going to put in a referral, thus,
showing his "evil intent."

114.  Plaintiff seeks Punitive Damages in the amount of $100,000 against
Security Director Larry Fuchs for violating the Plaintiff's Eighth
Amendment rights against "cruel and unusual punishment" from on
or around 6-28-16, when the Plaintiff complains to the Security
Director about PSU being deliberately indifferent to his mental
needs even though the Director had the power to help him but chose
to be deliberately indifferent to those needs. He even stated
that the Plaintiff must work with the "clinical staff here at NLCI"
showing that he was informed that he had a previously diagnosed
condition from Dr. John Morrell. In addition, Security Director
was informed that it was illegal to be deliberately indifferent
to the Plaintiff's mental needs, but still refused to intervien.

115.  Plaintiff seeks Punitive Damages in the amount of $100,000 against
Dr. Singleton for violating the Plaintiff's rights against
"cruel and unusual punishmant" by being deliberately indifferent

the Plaintiff's rights to a hearing and to call witnesses, even
after the Plaintiff had a Conduct Report for the same offense
6 days prior, which by doing so shows "evil intent" and violates
DOC policies.

121.   Plaintiff seeks Punitive Damages in the amount of $100,000 against
Lt. Sika for violating the Plaintiff's Fourteenth Amendment
rights of "due process" and "equal protection" by conspiring with
Dr. Singleton, Security Director Larry Fuchs, and Captain Crapster,
when individuals made a conduct report a minor instead of following
DOC's policies. The Defendants knew before hand that the Plaintiff
had a witness and made a conduct report a minor to circumvent
the Plaintiff's rights to a hearing and to call witnesses, even
after the Plaintiff had a Conduct Report for the same offense
6 days prior, which by doing so shows "evil intent" and violates
DOC policies.

122.   Plaintiff seeks Punitive Damages in the amount of $100,000 against
Captain Crapster for violating the Plaintiff's Fourteenth Amendment
rights of "due process" and "equal protection" by conspiring with
Dr. Singleton, Lt. Sika, and Security Director Larry Fuchs, when
individuals made a conduct report a minor instead of following
DOC's policies. The Defendants knew before hand that the Plaintiff
had a witness and made a conduct report a minor to circumvent
the Plaintiff's rights to a hearing and to call witnesses, even
after the Plaintiff had a Conduct Report for the same offense
6 days prior, which by doing so shows "evil intent" and violates
DOC policies.

123.   Plaintiff seeks Punitive Damages in the amount of $100,000 against
Dr. Singleton for violating the Plaintiff's First Amendment rights
by placing a Special Placement Needs against the Plaintiff
ultimately changing the custody level of the Plaintiff and transferring
him to a maximum security prison all in retaliation to inmate
complaint #NLCI-2016-13494.

124.   Plaintiff seeks Punitive Damages in the amount of $100,000 against
Security Director Larry Fuchs for violating the Plaintiff's
First Amendment rights by allowing a Special Placement Needs
to be filed against the Plaintiff ultimately changing the custody

level of the Plaintiff and transferring him to a maximum
security prison all in retaliation to inmate complaint #NLCI-
2016-13494. The Security Director is responsible for all security
issues.

125.   Plaintiff seeks Punitive Damages in the amount of $100,000 against
Captain Crapster for violating the Plaintiff's First Amendment
rights by allowing a Special Placement Needs to be filed against the
Plaintiff ultimately changing the custody level of the Plaintiff
and transferring him to a maximum security prison all in
retaliation to inmate complaint #NLCI-2016-13494. This is
while he was taking over some responsiblity for the Security
Director.

126.   Plaintff seeks Punitive Damages in teh amount of $100,000 against
Dr. Singleton for violating Executive Directive #43 work rules
#12 by being demeaning to the Plaintiff in the face to face
consultation with his sarcasm.

127.   Plaintiff seeks Punitive Damages in the amount of $100,000 against
Mr. Murphy for violating Executive ~~Directive~~ Directive #43 work rules
#7 by Making false statement about the Plaintiff, when stating
that  "this is the first request I have received from you." Knowing
that he has access to the Plaintiff's files and could review
if the Plaintiff submitted any requests.

128.   Plaintiff also seeks a jury trial on all issues triable by Jury.

129.   Plaintiff also seeks recovery of their costs in this suit, and;

130.   Any additional relief this Court deems just, proper, and
equitable.

DATED: 2-10-17

Respectfully submitted,

Paul D. Ammerman #253696
Columbia Correctional Institution
P.O. Box 900
Portage, WI 53901-0900

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Columbia, Wisconsin on

Paul D. Ammerman

on   2-10-17