# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

PAUL D. AMMERMAN,
    PLAINTIFF,

                                      Civil Action No.17-cv-00193-wmc

    v.

Dr. Singleton, Psychologist at New Lisbon Correctional. Inst. (NLCI),
Mr. Murphy, Psychologist at NLCI,
Denise Romanow, Psychologist at NLCI,
Captain Crapster, Security Captain at NLCI,
Security Director Larry Fuchs, Security Director at NLCI,
Lieutenant Sika, Lt. who signed the retaliatory conduct report at NLCI,
Individually, Personally and/or in their Official Capacity,
    Defendants.

---

### AMENDED CIVIL COMPLAINT PURSUANT TO 42 U.S.C. § 1983

---

## I. JURISDICTION AND VENUE

1.     This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has Jurisdiction under 28 U.S.C. Section 1331 and 1342 (a)(3). Plaintiff Ammerman seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff Ammerman's claims for injunction relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rule of Civil Procedures.

2.     The Western District of Wisconsin is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the event giving rise to this claim occurred.

## II. PLAINTIFF

3.    Plaintiff Ammerman is mentioned herein a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. Previously located at New Lisbon Correctional Institution, and then moved to his current location of Columbia Correctional Institution.

## III. DEFENDANTS

4.    Defendant, Dr. Singleton (first name never given) is a psychologist who is the main actor of this suit; located at New Lisbon Correctional Institution.

5.    Defendant, Mr. Murphy (first name never given) is a psychologist at New Lisbon Correctional Institution.

6.    Defendant, Denise Romanow is a psychologist at New Lisbon Correctional Institution.

7.    Defendant, Mr. Crapster (first name never given) is a captain located at New Lisbon Correctional Institution, responsible for all individuals in the restrictive housing unit (RHU/Segregation). He is also the one who was taking over security while Director Fuchs was on vacation.

8.    Defendant, Mr. Larry Fuchs is the Security Director for New Lisbon Correctional Institution. Responsible in determining the dispositions for Conduct Reports and the one responsible for the authorization of Special Placement Need (SPN) classification. He is also the one responsible for training other employees when dealing with the safety and security of the prison.

9.    Defendant, Lieutenant Sika (first name never given nor Plaintiff can be sure that is his correct name) is the Lieutenant who signed Conduct Report # 2616542.

## IV. STATEMENT OF CLAIMS

**Eighth Amendment Violations**

10.    On or around 4-12-2016 at New Lisbon Correctional Institution, Defendant Mr. Murphy violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and

unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff informed Mr. Murphy that he was previously diagnosed with certain personality disorders and needed help, the Plaintiff was ignored.

11. On or around 4-29-2016 at New Lisbon Correctional Institution, Defendant Denise Romanow violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff informed Ms. Romanow that the plaintiff was previously diagnosed with certain personality disorders and needed help, the Plaintiff was ignored.

12. On or around 6-3-2016 at New Lisbon Correctional Institution, Defendant Mr. Murphy violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff informed Mr. Murphy that the plaintiff was previously diagnosed with certain personality disorders and needed help, the Plaintiff was ignored.

13. On or around 6-15-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff informed Dr. Singleton that the plaintiff was previously diagnosed with certain personality disorders and needed help, the Plaintiff was ignored.

14. On or around 6-20-2016 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff informed Dr. Singleton that the plaintiff was previously diagnosed with certain personality disorders and needed help, the Plaintiff was ignored.

15. On or around 6-27-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff informed Dr. Singleton that the plaintiff was previously diagnosed with certain personality disorders and needed help, the Plaintiff was ignored.

16. On or around 6-27-2016 at New Lisbon, Defendant, Dr. Singleton violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by torturing the Plaintiff into believing that the plaintiff was going to get medication for his problems, which Dr. Singleton knew the Plaintiff was not going to get because Dr. Singleton did not refer the Plaintiff for medication.

17. On or around 6-28-2016 at New Lisbon Correctional Institution, Defendant Security Director Fuchs violated the Plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying the plaintiff's mental needs, when the Plaintiff brought the issue to Director Fuchs's attention, he failed to prevent this and further the violations.

18. On or around 6-28-16 at New Lisbon Correctional Institution, Defendant, Security Director Larry Fuchs violated the plaintiff's Eighth Amendment rights prohibiting "cruel and unusual punishment" by being deliberately indifferent and delaying his mental needs, when the plaintiff brought this issue to his attention, Larry Fuchs failed to prevent this or further violations.

19. On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the plaintiff's First Amendment rights by retaliating against the plaintiff's inmate complaint. Dr. Singleton violated this by issuing a conduct report (Exhibit-8) because of the complaint against him (complaint #NLCI-2016-13494).

20. On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Security Director Larry Fuchs violated the plaintiff's First Amendment rights by authorizing a conduct report (Exhibit-8) to be issued against the plaintiff in

4

retaliation for the complaint that the plaintiff filed (#NLCI-2016-13494), and it was his responsibility to authorize any conduct reports given to inmates, and the plaintiff had a First Amendment right to file complaints without fear of retaliation.

21. On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Security Director Larry Fuchs violated the plaintiff's Fourteenth Amendment rights of "due process" by training their employees to manipulating the Conduct Report System by allowing the third "threat" (# 2616542) be given as a Minor disposition (after a Conduct Report was given 7 days prior for the same offense, see Exhibit-7).

22. On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Lieutenant Sika violated the Plaintiff's First Amendment rights by retaliating against the plaintiff, because the plaintiff used his rights to use the Inmate Complaint System (complaint # NLCI-2016-13494), and then issued a conduct report (Exhibit-8) because of that complaint.

23. On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Lieutenant Sika violated the Fourteenth Amendment rights of "due process" by manipulating the Conduct Report System by allowing the third "threat" (# 2616542) be given as a Minor disposition (after a Conduct Report was given 7 days prior for the same offense, see Exhibit-7).

24. On or around 6-29-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the Fourteenth Amendment rights of "due process" by manipulating the Conduct Report System by allowing the third "threat" (# 2616542) be given as a Minor disposition (after a Conduct Report was given 7 days prior for the same offense, see Exhibit-7).

25. On or around 7-5-16 at New Lisbon Correctional Institution, Defendant Captain Crapster violated the plaintiff's First Amendment rights by knowing and allowing Dr. Singleton to write a conduct report (Exhibit-8) in retaliation to the plaintiff's complaint (# NLCI-2016-13494), after the plaintiff explained verbally that Dr. Singleton was retaliating with the conduct report, when Captain Crapster was filling in for Security Director Fuchs at the time.

26.     On or around 7-12-16 at New Lisbon Correctional Institution, Defendant Security Director Larry Fuchs violated the plaintiff's First Amendment rights by transferring the plaintiff to another institution and changing his classification in retaliation to the plaintiff's complaint against Dr. Singleton and PSU (# NLCI-2016-13494).

27.     On or around 7-12-16 at New Lisbon Correctional Institution, Defendant Dr. Singleton violated the plaintiff's First Amendment rights by issuing a "Special Placement Needs" so that the plaintiff is transferred to another institution in retaliation to the plaintiff's complaint (# NLCI-2016-13494).

28.     On or around 7-12-16 at New Lisbon Correctional Institution, Defendant Captain Crapster violated the plaintiff's First Amendment rights by transferring the plaintiff to another institution and changing his classification in retaliation to the plaintiff's complaint (# NLCI-2016-13494).

## V. EXHAUSTION OF REMEDIES

**Exhaustion of remedies for Deliberate Indifference of Previously Diagnosed Mental Needs:**

29.     On or around 6-26-2016 the Plaintiff writes to Psychological Service Unit's (PSU) supervisor to try to get help for his previously diagnosed conditions, and that Dr. Singleton, Mr. Murphy, and Denise Romanow refused/denies to treat. Also, that Dr. Singleton teased the Plaintiff by saying that everyone at New Lisbon is depressed. Dr. Singleton responded to this request on 6-27-2016. The Plaintiff contacted the Supervisor due to the fact that in order to submit an inmate complaint the Plaintiff must use the chain-of-command first before submitting the complaint.

30.     On or around 6-27-2016 the Plaintiff wrote to the Security Director Fuchs to inform him that PSU seems to want to delay to correct a mental imbalance, but was told to "Please continue to work with clinical staff here at NLCI." Again, this

is an attempt to exhaust the chain of command before submitting an inmate complaint.

31.     On or around 6-28-2016 the Plaintiff wrote an inmate complaint stating that he believed Dr. Singleton, Mr. Murphy, and Denise Romanow was being deliberately indifferent to his previously diagnosed mental needs.

32.     On or around 6-29-16 the complaint was acknowledged and received. This complaint was given the complaint number NLCI-2016-13494.

33.     On or around 6-14-16, S. Goodman and Inmate Complaint Examiner (ICE) recommended that complaint #NLCI-2016-13494 be dismissed and that the inmate was not contacted.

34.     On or around 7-28-2016, K. Kallas—Reviewing Authority dismissed the complaint.

35.     After receiving notice of the dismissed complaint the Plaintiff then appeals this decision to Madison.

36.     On or around 8-08-2016 the complaint was received in Madison by the Corrections Complaint Examiner (CCE), and on 8-9-16 the complaint was acknowledged.

37.     On or around 9-28-16, the Plaintiff received notification that the CCE requested an appeal extension.

38.     On or around 9-29-16, B. Hompe the CCE recommended that the complaint be dismissed, but was never investigated by B. Hompe.

39.     On or around 9-29-16, C. O'Donnell at the Office of the secretary dismissed the complaint.

## Exhaustion of remedies for the Retaliation to an Inmate Complaint by Conduct Report:

40.     On or around 7-06-2016 the Plaintiff tries to write the Security Director Fuchs about the Conduct Report #2616542, but was informed by Captain Crapster that the security director was out of the institution and to try to contact him next week.

7

This is an attempt to exhaust the chain of command before submitting an inmate complaint.

41. On or around 7-11-2016 the Plaintiff wrote up an inmate complaint stating that Dr. Singleton wrote a Conduct Report (#2616542) in retaliation to a First Amendment right against the Plaintiff's complaint (NLCI-2016-13494) from 6-28-2016.

42. On or around 7-11-2016 the Plaintiff's complaint was acknowledged on 7-11-2016 and was given the complaint number NLCI-2016-14408.

43. On or around 8-28-2016, 8 days after the 30 business day requirement for investigation for any complaint, the Plaintiff contacts ICE here at Columbia Correctional Institution to see what the decision in this matter.

44. On or around 8-28-2016, the Plaintiff writes up a complaint appeal. The Plaintiff then sends this appeal to Madison so he is not time barred. The CCE office time stamps that they received the appeal on 9-01-16.

45. Later on or around 8-28-2016, the ICE wrote back with the decision showing that it was rejection. Special Note: Inmate contacted-No.

46. On or around 8-31-2016 the Plaintiff completes a Request for Review of Rejected Complaint and sends that form to NLCI as informed by the rejection claims.

47. On or around 9-06-2016 the Plaintiff receives notice from the CCE in Madison that the Inmate complaint appeal was sent back due to the fact that the defendant sent the Inmate complaint appeal before he was given the rejection notice. This was determined on 9-02-16 that the CCE shall not review a rejected complaint.

48. On or around 9-6-2016, the Reviewing authority dismissed the complaint as untimely by D. Strahota—Warden.

### Exhaustion of remedies for the Retaliation by Transferring the Defendant to Another Institution:

49. On or around 7-18-16, the Plaintiff wrote an Inmate Complaint against PSU for transferring him in retaliation for complaint #NLCI-2016-13494. On this date the complaint was not accepted because the Plaintiff forgot to sign the complaint, and was commanded to contact Ms. Fait.

50.     On 7-19-2016 the Plaintiff wrote to Ms. Fait (Classification Specialist at Columbia Correctional Institution) in regards to retaliation claim that Dr. Singleton wrote an Conduct Report in Retaliation to the Plaintiff's First Amendment Rights, and that then an Special Placement Needs (SPN) was issued, thus, the transfer of the Plaintiff was also a retaliatory response to that Inmate Complaint.

51.     On or around 7-22-2016, the Plaintiff contacts ICE to inform them that the Plaintiff has attempted to contact Ms. Fait. The ICE responded: Noted.

52.     On or around 7-25-2016, I. Hart returns this complaint stating that I have not exhausted the chain-of-command before filing and that I need to contact Ms. Fait, when in fact I have, and this shows how the ICE is trying to prevent inmates from exhausting their remedies.

53.     On or around 7-27-16 the Plaintiff wrote an Inmate Complaint filed against PSU for retaliating against the complaint the Plaintiff filed on 6-29-16 by transferring the Plaintiff to another institution.

54.     On or around 7-28-2016 the Inmate Complaint was received and acknowledged, and was assigned the complaint number: CCI-2016-15922.

55.     On or around 7-28-2016 the complaint was Rejected stating that this is a Program Review issue and that the ICRS may only be used to challenge the procedure used in the Program Review process. Even though the complaint clearly stated that this was a retaliatory complaint. Here the ICE has tried to change the complaint's issue as they do to prevent the correct issue to be reviewed. Special Note: Inmate Contacted-no. Once again the Plaintiff is requesting an injunction against this practice.

56.     On or around 8-16-16 the Plaintiff uses form DOC-2182 (Request for Review of Rejected Complaint) and sent that to New Lisbon.

57.     On or around 8-22-2016, the rejected appeal was received and acknowledged.

58.     Presently the Plaintiff is still waiting for the results of this review of rejected complaint.

**Exhaustion of Remedies by Appealing the Conduct Report # 2616542:**

59.  On or around 6-28-2016 the Plaintiff files an inmate grievance against PSU and was acknowledged on 6-29-2016, which was the same day the minor Conduct Report # 261542 was given to inmate Ammerman.

60.  On or around 6-29-2016 Plaintiff reports to Correctional Officer Hoffman that he had a witness named Novak [Phillip] and that he wished to fight this ticket.

61.  On or around 7-5-2016 the Plaintiff wrote to Captain Crapster about the minor ticket and how that they did not follow policy and procedures pursuant to DOC 303. He wrote back stating "several factors are taken to determine what is offered as a sanction (IE) CR history." If you see the third CR was for threats, and that is the third ticket in 5 months for such offense. With that in mind, the third ticket should have been a major just like the second ticket.

62.  On or around 7-6-2016 the Plaintiff files an appeal of a contested hearing.

63.  On or around 7-7-2016 New Lisbon receives and stamps the appeal.

64.  On or around 7-12-2016 the Plaintiff before leaving New Lisbon talks to Capt. Crapster about the decision of the appeals on the conduct report.

65.  On or around 7-12-2016 the Plaintiff gets transferred to Columbia Correctional Institution.

66.  On or around 7-18-2016 the Plaintiff writes to the security director about the decision on the appeal.

67.  On or around 7-24-2016 the Plaintiff again writes to Mr. Weber about the decision on the appeals of his conduct report.

68.  On or around 7-28-2016 someone signed the decision and they affirmed the hearing officer's decision in accordance to DOC 303.77.

**Exhaustion of Remedies by Appealing the Parole Review Committee Decision:**

69.  On or about 7-5-2016 the Plaintiff see PRC to determine if he warrants a transfer, and according to the new minor ticket they decided that it was justified.

70. On 7-8-2016 the Plaintiff files a DOC-1292 an Administrative Review of Initial Classification (IC) or Re-classification (RC) Decision, and sent it to Madison.

71. On 7-27-2016 they rejected this complaint. They informed the Plaintiff the jurisdiction of the inmate, and to use the Inmate Complaint System.

**Inmate Complaint Review System's violation of Exhaustions of Remedies, Which Would Intimidate an Inmate for Future Complaints:**

72. On 8-19-16 Inmate complaint examiner M. Leiser violates DOC 310.00.01 by participating in an inmate complaint that includes a grievance against her. She sends back a complaint about her on 8-23-16.

73. On 8-25-16 again Inmate Complaint Examiner M. Leiser violates DOC 310.00.01 by participating in an inmate complaint that includes a grievance against her. She sends back a complaint about her on 8-26-16.

74. During the time at Columbia Correctional Institution the Defendant tries to exhaust his remedies pursuant to the PLRA, but on 8-31-16 L. Alsum Odonovan states "If this comment is either a threat…" the Plaintiff wants to notify the courts that: 1) the Plaintiff has already received a false conduct report for threats; 2) this has now scared the Plaintiff into fearing that anymore inmate complaints from the Plaintiff will result in a conduct report, thus, has intimidated the Plaintiff. The Plaintiff argues that any defense claims against exhaustion of remedies should be noted that the defendant was intimidated by Odonovan.

# VI. FACTS

75. First and foremost, the Plaintiff apologizes because he is embarrassed and ashamed of his mental illness and may have problems explaining his issues properly. In addition, to these mental illnesses he has a low grade point average in high school and very limited educations that followed.

76. On or about 9-19-2007 psychologist Paul Grady informs Patty Doerr (Plaintiff's probation/parole agent) that the plaintiff may have some "Sociopathic Tendencies" during his assessment of the Plaintiff.

77. On or about 1-15-2008 the plaintiff enters into therapy with Paul Grady until or about 4-19-2012.

78. On or about 6-18-2010, the plaintiff meets and sets up future time with psychologist Dr. John Morrell.

7⁹. On or about 5-15-2012, Paul Grady informs probation agent Patty Doerr that the plaintiff has "Marginal Antisocial Personality Disorder."

80. On or about 5-15-2015, Dr. John Morrell informs Agent Doerr that he also agrees that the plaintiff does have personality disorders.

81. On or about 5-25-2012, Dr. Morrell informs Agent Doerr that the plaintiff clearly has personality disorders.

82. On or about 1-31-2013 the plaintiff enters into prison.

83. On or about 4-12-2016, the plaintiff writes to PSU with concerns about problems with his mood. During the session, Mr. Murphy gives the plaintiff a packet relating to Anger Management (Exhibit-4). The plaintiff informs Mr. Murphy that he has been previously been diagnosed with personality disorders, sociopathic tendencies, and depression (Exhibit-5, pages 6,13). Also, the plaintiff informs Mr. Murphy that he believes that his aggression stems from his personality disorders and depression. The plaintiff asks Mr. Murphy if there was some kind of medicine that would help him with his depression or other psychological issues, but those issues were ignored. During this session Mr. Murphy gives the plaintiff an anger management packet. The plaintiff explains to Mr. Murphy that a packet is not going to help the chemical imbalance that maybe present in the plaintiff. The plaintiff asks Mr. Murphy if there is some sort of medication to help with anxiety and his depression, thus, keeping his aggression low, but Mr. Murphy explains that he wished there was a medication for anger. The plaintiff pleads with Mr. Murphy for medication for his anxiety and depression, which the plaintiff believes his anger stems from.

84.     On or about 4-27-2016 the Plaintiff once again tries to get help for his mental needs, and wrote to PSU. He states in his DOC-3035B (PSU request form) that his anger issues "may be linked to my depression + anxiety problems." Again the Plaintiff was ignored.

85.     On or around 4-29-16, the Plaintiff had a face to face consultation with Denise Romanow, who informed him that it was her last day here. This angered the plaintiff, because the plaintiff thought that it was a waste of time if she wasn't going to follow up and help the plaintiff. Also, the plaintiff paperwork showing he was previously diagnosed with certain mental issues. Ms. Romanow informed the plaintiff that because it came from another doctor she wasn't going to look at it (Exhibit-2).

86.     On or about 6-3-16 request for help from previously diagnosed conditions, but Mr. Murphy responds that this is the first request he has received from me, which is a lie see 4-12-16 where he responds to a request from me, and later had a face to face interview with the Plaintiff (Exhibit-6).

87.     On or about 6-6-2016 the Plaintiff once again contacts PSU, but he was on a hospital trip for his broken elbow. Also, the Plaintiff writes another letter explaining his loss of his longtime Pastor and his mental anguish. In addition, in this letter he informs PSU that he has a long history of battery; in hopes that he will get the medication for his anxiety and depression, because his aggression stemmed from frustration to his Sociopathic tendencies and psychological issues.

88.     On or about 6-23-2016, the Plaintiff meets with Dr. Singleton. Again the Plaintiff informs Dr. Singleton about his issues and his previously diagnosed condition. Dr. Singleton then gets belligerent and states again that his diagnosis is the one that really matters. The Plaintiff also informs him of his previously diagnosed depression, and Dr. Singleton responds, "Everyone at New Lisbon is depressed." The Plaintiff also discusses that he feels that if the "crazy" people on the streets would get the help they needed things like Sandyhook or Aurora would never have happened. Dr. Singleton asks the Plaintiff what he would do in here, because there

are no guns in here. The Plaintiff gives a hypothetical scenario about taking out a weaker prison guards. The Plaintiff believes this is Dr. Singleton's way of tricking a mentally ill and low intelligent person in making a threat, which later the Plaintiff was given a conduct ticket.

89. On or around 6-22-2016 later in the day the Plaintiff was then taken into custody and placed in Temporary Lockup Unit and given a conduct report for threats; Conduct Report #2616541 (Exhibit-7) and was determined to be a major offense, because the Plaintiff received a conduct report for a previously for threats (Exhibit-11).

90. On or about 6-24-2016 Plaintiff Ammerman complains to the Security Director Fuchs that PSU was not helping and asking him for an intervention, then the Plaintiff was informed by Security Director Fuchs to "Please continue to work with clinical staff here at NLCI". He responded on 6-28-2016.

91. On or around 6-24-2016 Dr. Singleton enters form DOC-3473 into the defendant's psychological folder, which is a Psychological Services Clinical Contact. In this report his diagnosis reflects his previous diagnosis: Antisocial Personality Disorder. Dr. Singleton signed the report on 6-22-2016, and his supervisor signed the form on 6-24-2016. The Plaintiff asks: Why didn't they give the Plaintiff medication for his problem?

92. On or about 6-26-2016 the Plaintiff once again writes to PSU for help, this time writing to the PSU supervisor, and Dr. Singleton responded. This time the Plaintiff asks in writing for medicinal help with his anxiety and depression. Dr. Singleton writes, "If you would like medication submit a blue request slip to HSU." The Plaintiff believes this is to torture the Plaintiff into believing he was going to get the medical help he has been requesting.

93. On or about 6-28-2016, the Plaintiff writes a complaint against PSU for being deliberately indifferent and delaying mental needs. This complaint was assigned the number NLCI-2016-13494, which was acknowledged on 6-29-2016.

14

94.     On or about 6-28-2016 the Plaintiff was in the segregation recreation area with multiple other inmates. The Plaintiff saw Dr. Singleton making his rounds and replied to Philip Novak that Dr. Singleton was the one who made up a Conduct Report (#2616541). Other people heard me say this and started to make a bunch of noise (see declaration of Philip Novak).

95.     On or about 6-29-2016 the Plaintiff writes to Health Service Unite (HSU) to plead for help. Dr. Reynolds responds that there is no indication for a medication referral, which means that Dr. Singleton did not give a referral, even though Dr. Singleton's own diagnosis shows the Plaintiff has antisocial disorders, and Dr. Singleton was the one who informed the Plaintiff to contact HSU if he wanted medication. With this in mind, this lack of help further angers the Plaintiff into believing that Dr. Singleton was making fun of him feeding fuel to his mental needs and torturing the Plaintiff mentally.

96.     On or about 6-29-2016 Dr. Singleton decides to write up a conduct report for the incident on or about 6-28-2016 (Exhibit-8), which incidentally is the same date that the Inmate Complaint Examiner (ICE) acknowledged my grievance (Exhibit-9). According to the Conduct Report (#2616542) Dr. Singleton even admits that after everything was said he made eye contact with the Plaintiff. In other words, Dr. Singleton wasn't even looking at the Plaintiff, and this raises the question that the conduct report was a lie. Also, the Plaintiff submits a declaratory statement from another inmate who was present; witnessing that Dr. Singleton lied about any threats (See declaration of Philip Novak). In fact, the plaintiff Correctional Officer Hoffman that he had a witness (Exhibit-10). The Plaintiff believes that the ICE contacted Dr. Singleton to get his side of the story, and that angered Dr. Singleton into writing a conduct report in retaliation of the Plaintiff's grievance.

97.     On or about 6-29-2016, the Plaintiff receives minor conduct report #2616542 for threats, which he believes is in retaliation to the complaint NLCI-2016-13494. Also noted that this conduct report is only around 7 days after the Plaintiff received a major conduct report for the same offense (Exhibit-7, 8). The Plaintiff

believes that this third conduct report for threats (see Exhibit-7, 8, 11) is made a minor offense on the grounds that the Plaintiff had a witness, and they wanted to abuse the new DOC 303 due process. The new DOC 303 process does not allow the inmate a hearing, call witnesses, or anything in the amount of due process.

98.    Also, during that time Dr. Singleton requests a Special Placement Needs (SPN) be applied to the Plaintiff; changing his placement status. Changing his status from medium custody to maximum custody, and because Dr. Singleton needed the Security Director to agree to this shows that Security Director Fuchs agreed. This Plaintiff believes is in retaliation to the inmate complaint he filed upon PSU; NLCI-2016-13494 against Dr. Singleton.

99.    Finally, they transfer the Plaintiff to Columbia Correctional Institution on 7-12-2016, which the Plaintiff believes is in retaliation from the inmate complaint (NLCI-2016-13494).

100.   During the time following the Plaintiff attempts to exhaust his administrative remedies and does not see the need to repeat previously stated information; see paragraph 26-74.

## VII. LEGAL AUTHORITIES

### DELIBERATE INDIFFERENCE

101.   Deliberate indifference to mental/medical needs see *Estelle v. Gamble*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1984); *McGill v. Duckworth*, 944 F.2d 344, 351 (7th Cir. 1991); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); *Chapman v. Kelner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Proffitt v. Ridgeway*, 279 F.3d 503, 506 (7th Cir. 2002); *Brock v. Wright*, 315 F.3d 158 (2nd Cir. 2003); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006); *Townsend v.*

*Fuchs*, 522 F.3d 765; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007).

## RETALIATION

102.     Retaliation against inmate complaints see *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2nd Cir. 1976); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *Wolff v. McDonnell*, 418 U.S. 539; *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *Dewarlt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002); *William v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003); *Szymankiewicz v. Picard*, 2004 U.S. Dist Lexis 7895.

## PUNITIVE DAMAGES

103.     Punitive damages intended to punish violators and to prevent future violations see *Smith v. Wade*, 461 U.S. 30, 51 (1983); *Soderback v. Burnett County*, 752 F.2d 285, 289-91 (7th Cir. 1985); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290 (7th Cir. 1987); *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 772 (CA7 1992); *Barbour v. Merrill*, 310 U.S. App. D.C. 419, 48 F.3d 1270, 1277 (D.C. Cir. 1995); *Merriweather v. Family Dollar*, 103 F.3d 576 (7th Cir. 1996); *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996); *Hardeman v. City of Albuquerque,* 377 F.3d 1106, 1120-21 (CA10 2004); *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2621 (2008); *Shelby v. Gelios,* 287 Fed. Appx. 526 (2009).

## DUE PROCESS

104.     Inmates rights to have a hearing or call witnesses see *Wolff v. McDonnell*, 418 U.S. 539, 558; *Hayes v. Walker*, 555 F. 2d 625.

105.     Due Process violations from lack of hearings on conduct reports see *Department of Corrections 303* (consideration of a Major Conduct Report); *Department of Corrections 310* (Inmate Complaint Procedures).

# VIII. RELIEF:

**WHEREFORE,** Plaintiff respectfully prays that this court enter judgment:

106. Granting Plaintiff Ammerman a declaration that the acts and omissions describe herein violates his rights under the Constitution and laws of the United States, and

107. A preliminary and permanent injunction ordering PSU to seek the medical needs of the Plaintiff.

108. Plaintiff seeks an injunction asking this Court to order the Department of Corrections to change the rules dealing with the rights of inmates to a fair hearing with all conduct reports. This way the DOC will not make a conduct report a minor in an effort to by pass the rights of an inmate to a hearing or to call witnesses.

109. Plaintiff seeks an injunction asking this Court to order Columbia Correctional Institution to change the rules dealing with the rights of inmates to be contacted if an inmate complaint is rejected, so that the inmate can properly appeal the rejected complaint without being considered untimely.

110. The Plaintiff asks for the large amount in punitive damages to prevent the Department of Corrections from violating individual rights in the future. In other words, to heavily punish the DOC so they will not use "evil intent" to by pass individuals rights or to punish them harshly, and to provide mentally ill inmates the help they so desperately need for the safety and security of public for the following:

111. Plaintiff seeks punitive damages in the amount of $100,000 against Mr. Murphy for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent in delaying mental needs, from on or around 4-12-16, when the Plaintiff pleaded for help with his mental illness previously diagnosed by two clinicians.

112. Plaintiff seeks punitive damages in the amount of $100,000 against Denise Romanow for violating the Plaintiff's Eighth Amendment rights against being

deliberately indifferent in delaying mental needs, from on or around 4-29-16, when the Plaintiff pleaded for help with his mental illness previously diagnosed by two clinicians.

113.     Plaintiff seeks punitive damages in the amount of $100,000 against Mr. Murphy for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent in delaying mental needs, from the face to face session, when the Plaintiff pleaded for help with his mental illness previously diagnosed by two clinicians.

114.     Plaintiff seeks punitive damages in the amount of $100,000 against Mr. Murphy for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent in delaying mental needs, from on or around 6-3-16, when the Plaintiff pleaded for help with his mental illness previously diagnosed by two clinicians, and then lying about the request being the "first request I have received from" the plaintiff.

115.     Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent in delaying mental needs, from on or around 6-15-16, when the Plaintiff pleaded for help with his mental illness previously diagnosed by two clinicians.

116.     Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent in delaying mental needs, from on or around 6-23-16, when Dr. Singleton had a one-on-one consultation, and ignored the Plaintiff's plea for help with his mental illness previously diagnosed by two clinicians.

117.     Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent and delaying mental needs, from on or around 6-27-16, when the Plaintiff pleaded for help with his mental illness previously diagnosed by two clinicians.

118.    Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against "cruel and unusual punishment" from on or around 6-27-16, by torturing the Plaintiff into thinking he was going to get medical help for his mental needs when he told the Plaintiff that if he wanted medicine to contact HSU well knowing he was not going to get the relief for his previously diagnosed depression, antisocial personality disorder, and/or Sociopathic tendencies, because Dr. Singleton was not going to put in a referral, thus, showing "evil intent."

119.    Plaintiff seeks punitive damages in the amount of $100,000 against Security Director Fuchs for violating the Plaintiff's Eighth Amendment rights against "cruel and unusual punishment" from on or around 6-28-16, when the Plaintiff complains to the Security Director about PSU being deliberately indifferent to his mental needs even though he had the power to help him but chose to be deliberately indifferent to those needs. He even stated that the Plaintiff must work with the "clinical staff here at NLCI" showing that he was informed that he had a previously diagnoses condition from Dr. John Morrell. In addition, Security Director Fuchs was informed that it is illegal to be deliberately indifferent to the Plaintiff's mental needs and that PSU by delaying that help is making his mental illnesses worse.

120.    Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's Eighth Amendment rights against being deliberately indifferent in delaying mental needs, from on or around 6-29-16, when Plaintiff again asked for relief.

121.    Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's First Amendment rights by giving the Plaintiff a conduct report in retaliation for an inmate complaint number NLCI-2016-13494; that was acknowledged from on or around 6-29-16.

122.    Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for conspiring with Security Director Fuchs, Lieutenant Sika, and Captain Crapster

20

in making a conduct report (Exhibit-8) a minor instead of following DOC policies and making it a major ticket, when the Plaintiff received a major conduct report 6 days prior for the same offense, thus, showing "evil intent" to violate the Plaintiff's Fourteenth Amendment rights of "due process" from on or around 6-29-16.

123. Plaintiff seeks punitive damages in the amount of $100,000 against Security Director Fuchs for conspiring with Dr. Singleton, Lieutenant Sika, and Captain Crapster in making a conduct report (Exhibit-8) a minor instead of following DOC policies and making it a major ticket, when the Plaintiff received a major conduct report 6 days prior for the same offense, thus, showing "evil intent" to violate the Plaintiff's Fourteenth Amendment rights of "due process" from on or around 6-29-16.

124. Plaintiff seeks punitive damages in the amount of $100,000 against Security Director Fuchs for allowing individuals to violate the Plaintiff's First Amendment rights by allowing individuals to write a conduct report (Exhibit-8) in retaliation for complaint number NLCI-2016-13494 from on or around 6-29-16.

125. Plaintiff seeks punitive damages in the amount of $100,000 against Lieutenant Sika for conspiring with Dr. Singleton, Security Director Fuchs, and Captain Crapster in making a conduct report (Exhibit-8) a minor instead of following DOC policies and making it a major ticket, when the Plaintiff received a major conduct report 6 days prior for the same offense, thus, showing "evil intent" to violate the Plaintiff's Fourteenth Amendment rights of "due process" from on or around 6-29-16.

126. Plaintiff seeks punitive damages in the amount of $100,000 against Lieutenant Sika for allowing individuals to violate the Plaintiff's First Amendment rights by allowing individuals to write a conduct report (Exhibit-8) in retaliation for complaint number NLCI-2016-13494 from on or around 6-29-16.

127. Plaintiff seeks punitive damages in the amount of $100,000 against Captain Crapster for conspiring with Dr. Singleton, Lieutenant Sika, and Security Director

Fuchs in making a conduct report (Exhibit-8) a minor instead of following DOC policies and making it a major ticket, when the Plaintiff received a major conduct report 6 days prior for the same offense, thus, showing "evil intent" to violate the Plaintiff's Fourteenth Amendment rights of "due process" from on or around 6-29-16.

128. Plaintiff seeks punitive damages in the amount of $100,000 against Captain Crapster for allowing individuals to violate the Plaintiff's First Amendment rights by allowing individuals to write a conduct report (Exhibit-8) in retaliation for complaint number NLCI-2016-13494 from on or around 6-29-16.

129. Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's First Amendment rights by placing a Special Placement Needs against the Plaintiff ultimately changing the custody level of the Plaintiff and transferring him to a maximum security prison, in retaliation to inmate complaint #NLCI-2016-13494; the PRC hearing was from on or around 7-5-16.

130. Plaintiff seeks punitive damages in the amount of $100,000 against Dr. Singleton for violating the Plaintiff's First Amendment rights by placing a Special Placement Needs against the Plaintiff ultimately changing the custody level of the Plaintiff and transferring him to a maximum security prison, in retaliation to inmate complaint #NLCI-2016-13494 from on or around 7-5-16.

131. Plaintiff seeks punitive damages in the amount of $100,000 against Security Director Fuchs for allowing the Plaintiff's First Amendment rights by allowing a Special Placement Needs against the Plaintiff ultimately changing the custody level of the Plaintiff and transferring him to a maximum security prison, in retaliation to inmate complaint #NLCI-2016-13494 from on or around 7-5-16.

132. Plaintiff seeks punitive damages in the amount of $100,000 against Captain Crapster for allowing Security Director Fuchs and Dr. Singleton to violate the Plaintiff's First Amendment rights who could have prevented a Special Placement Needs against the Plaintiff ultimately changing the custody level of the Plaintiff

and transferring him to a maximum security prison, in retaliation to inmate complaint #NLCI-2016-13494 from on or around 7-5-16.

133.   Plaintiff also seeks a jury trial on all issues triable by jury.

134.   Plaintiff also seeks recovery of their costs in this suit, and;

135.   Any additional relief this Court deems just, proper, and equitable.


DATED: _1/-22-17_

Respectfully submitted,
Paul D. Ammerman #253696
Columbia Correctional Institution
P.O. Box 900
Portage, WI 53901-0900

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Columbia, Wisconsin on

Paul D. Ammerman