IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PAUL D. AMMERMAN,

                      Plaintiff,                     OPINION AND ORDER

   v.

                                                  17-cv-193-wmc

DR. SINGLETON, et al.,

                      Defendants.

Before the court are several filings related to plaintiff's motions for: injunctive relief requiring the DOC to supply him with gabapentin to treat an alleged seizure condition (dkt. #21); an order depriving defendants of their right to counsel due to misrepresentations that they allegedly made in this series of filings (dkt. #37); an award of sanctions (dkt. #52); assistance in recruiting counsel (dkt. #55); and an order for contempt of court (dkt. #59). For the reasons that follow, each of these motions will be denied.

BACKGROUND

The background related to these motions is principally set forth in this court's July 6, 2018, opinion and order. (Dkt. #27.) The court has since received plaintiff's medical records (dkt. #29), a declaration by his DOC physician (dkt. #32), a response to that declaration by plaintiff (dkt. #36), and a motion for clarification (dkt. #47). Each of these documents relate to plaintiff's motion for injunctive relief, and their import is discussed in the context of deciding that motion below.

OPINION

I.  **Request for Preliminary Injunctive Relief**

In response to the motion for injunctive relief, the court initially required counsel for the Wisconsin DOC to provide information about plaintiff's access to gabapentin, as well as to advise whether an order was required to ensure that defendants regularly provided plaintiff with prescribed gabapentin until a preliminary injunction hearing could be held; however, given the lack of supporting evidence, the court otherwise denied plaintiff's request for a preliminary injunction. (Dkt. #27.) Based on the subsequent filings by the parties, the court will not disturb its original finding that plaintiff has not made an adequate showing that he is likely to succeed on the merits with respect to any other request for injunctive relief.

Specifically, Salam Syed, who is plaintiff's doctor at Columbia Correctional Institution, opined in his declaration that plaintiff is not at risk for seizures. (Dkt. #32 ¶ 9.) Dr. Syed explained that gabapentin in particular was prescribed for radiating pain in plaintiff's left shoulder and arm in July, 2015. (*Id*. ¶ 10.) Since Dr. Syed believed gabapentin was unnecessary to treat plaintiff's carpal tunnel syndrome, he ordered it to be tapered off in February, 2017. (*Id*. ¶ 11.) However, he placed plaintiff back on gabapentin in May of the same year after additional pain complaints. (*Id*. ¶ 12.)

Following two incidents where he fell, which plaintiff believes were seizures, he was seen by the UW Health Faint and Fall Clinic, which found that his symptoms were due to "lightheadedness," rather than epilepsy or a seizure disorder. (*Id*. ¶¶ 13-14.) After several pills were discovered in his cell in violation of prison policy, plaintiff's gabapentin

prescription was again discontinued in June of 2018, because the pills could be sold or used to overdose.  (*Id*. ¶ 15.)  Plaintiff was then prescribed Nortriptyline for his nerve pain, which Dr. Syed believes to be an appropriate substitute for gabapentin.  (*Id*. ¶ 16.)

Plaintiff argues that Dr. Syed's declaration is misleading because it does not mention that he cancelled a neurology appointment in May, 2017.  (Dkt. # 36 ¶¶ 1-2.)  However, it is unclear how this omission bears on the veracity of Dr. Syed's declaration, especially as it occurred well before his UW consultation in January of 2018, which concluded that plaintiff did not suffer from seizures.  While plaintiff further argues that UW's conclusion was from the perspective of a cardiologist, rather than neurologist (*id*. ¶ 4), the distinction would seem largely immaterial as UW's diagnosis explains plaintiff's fainting symptoms *and* is consistent with Dr. Syed's own diagnosis.  Plaintiff also explains that his storing of gabapentin in his cell had been prompted by shortages in the prison's supply, but he neither contests that this was a violation of prison policy, nor that this was the reason his prescription was discontinued.  (*See* dkt. #37 ¶ 5.)  Plaintiff also represents that Nortriptyline was prescribed to help him sleep, in addition to nerve pain, but this does not disturb Dr. Syed's conclusion that gabapentin is unnecessary to treat plaintiff's nerve pain. (Dkt. #36 ¶ 6.)

Plaintiff makes additional assertions about his medical care in his later motion seeking forfeiture of defendants' right to counsel that arguably bear on his request for preliminary injunctive relief.  (Dkt. #37.)  Plaintiff asserts in particular that Dr. Syed discontinued gabapentin because he threatened to add Syed as a defendant to a lawsuit (*id*. ¶ 2), but this is hardly persuasive given plaintiff's admission to storing that drug in his

cell in violation of prison policy. Plaintiff further reasserts that gabapentin prevents his seizures (*id.*), but this is insufficient for injunctive relief when both Dr. Syed and the UW Health Faint and Fall Clinic concluded that his so-called seizures were not the cause of plaintiff's falls. Finally, plaintiff later theorizes that pain increases his blood pressure, which could be the cause of seizure episodes (*id.* ¶ 6), but this again assumes that seizures are the cause of his falls, which does not bear on whether Nortriptyline is sufficient for the treatment of his pain in the months leading up to trial.

Finally, as mentioned in the court's previous ruling, injunctive relief is inappropriate in this matter because the screened case does not include Columbia Correctional Institution (or its medical providers), which is where plaintiff is currently incarcerated and being denied gabapentin. Accordingly, plaintiff is directed to make any additional filings related to his request for injunctive relief in his other case against that institution (17-cv-800-wmc), where he requested the same injunction and the unnamed Health Service Unit Supervisor of the Columbia Correctional Institution is a party.

## II. Defendants' Right to Counsel

Plaintiff argues that defendants have forfeited their right to counsel for making dishonest statements about his medical care in their filings; he also argues that Dr. Syed and Assistant Attorney General Rakvic-Farr should be held in contempt for the same reason. (Dkt. #37 at 5.) Because plaintiff has proven no such dishonesty, this motion is denied. Regardless, there is no legal precedent for such an extraordinary remedy. Indeed, as is true in the cases cited by plaintiff, courts have sometime restricted a party's choice of a *specific* counsel, and even then, typically in situations where a party has changed its

4

representation in order to hinder proceedings.

**III. Request for Sanctions**

Based on some of the same allegations as in his motion to strip defendants of their right to counsel, plaintiff next seeks sanctions alleging that "the defense committed spoliation of the medical records and Dr. Syed committed perjury." (Dkt. #52 at 2; *compare id.* at 1-2 (alleging that: (1) the progress note was altered; (2) the medication log did not show gabapentin being restarted in May; and (3) only plaintiff's copy of the progress notes is consistent with the medication log) *with* dkt. #27 at 2-4 (alleging that: (1) the progress note "is false"; (2) the medication log did not show gabapentin being restarted in May; and (3) Syed and counsel "submitted tampered/altered evidence").) There being no record evidence supporting these allegations, this motion will also be denied.

**IV. Assistance Recruiting Counsel**

Plaintiff next asks the court to "appoint[]" him counsel because: (1) he cannot afford representation; (2) his "imprisonment will greatly limit his ability to litigate"; (3) the case is "complex," requiring "significant research, investigation, and [the retention of] medical professionals"; (4) an attorney would be able to present evidence and examine witnesses better; and (5) plaintiff could not obtain his own lawyer. (Dkt. #55 ¶¶ 1-4.) Recognizing that the court would not consider his request without a showing that he either (1) made reasonable efforts to find his own lawyer or (2) was prevented from making such efforts, *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992), Ammerman also attached letters from three attorneys who declined to represent him. (Dkt. #55-1 at 1-5.)

5

In considering whether to recruit counsel for a *pro se* litigant, the relevant question is whether the complexity of the case exceeds the plaintiff's ability to litigate it. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). While understandably concerned that a trained attorney would litigate his case better than he could, Ammerman is in the same position as most other *pro se* litigants, almost none of whom has legal training of any kind. Thus far, Ammerman's multiple filings have been legible, coherent and focused on the relevant issues, suggesting that he is at least as capable as the average *pro se* litigant to present his claims.

Certainly, pro bono counsel may be able to present plaintiff's case more effectively than plaintiff, but "if that were the test, district judges would be required to recruit counsel for every indigent litigant." *Pruitt*, 503 F.3d at 655 (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)) (internal quotation marks omitted). Given the difficulty the court faces in recruiting counsel for *pro se* litigants in substantially greater need of assistance, the court will deny plaintiff's motion at this time, but will do so without prejudice. If discovery, factual or legal issues involved in this case become more complicated than they appear right now, Ammerman may renew his motion for assistance.

## V. Contempt of Court

Finally, plaintiff asks the court to find "Dr. Syed and any other 'prison authorities'" in contempt of court for discontinuing his gabapentin and violating the preliminary injunction. (Dkt. #59 at 1-2.) As the court previously explained above, however, the limited relief granted was merely for defendants to provide information -- not to continue or restart the gabapentin -- and plaintiff has not made an adequate showing that he is likely

6

to succeed on the merits of his claim that the decision to discontinue his prescription for gabapentin was due to deliberate indifference, much less the product of defendants' contempt for this court's order.

Plaintiff also alleges that "Dr. Syed committed perjury" in his July declaration by declaring that Ammerman is currently prescribed nortriptyline to treat his nerve pain, because that medication was discontinued in March 2018. (*Id.* at 2.) As defendants explain, however, plaintiff's nortriptyline was initially prescribed on September 14, 2017, for six months, and while interrupted briefly in March, Ammerman's medication records confirm that he continued to receive nortriptyline during April, May, June and July 2018. (Dkt. #62-1 at 1-8.)[1] Accordingly, this motion will also be denied in its entirety. Plaintiff is warned that further frivolous filings will be stricken by the court.[2]

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for a preliminary injunction and temporary restraining order (dkt. #21) remains denied and additional filings related to it should be made in Case No. 17-cv-800-wmc.

2) Plaintiff's motion for clarification (dkt. #47) is DENIED AS MOOT.

3) Plaintiff's motion for forfeiture of defendants' counsel rights (dkt. #37) is DENIED.

---

[1] In addition to the interruption in March, there were days when plaintiff did not receive the nortriptyline, but that hardly amounts to perjury.

[2] At one point, plaintiff has also filed a request for leave to file a reply on his motion for contempt. (Dkt. #63.) This motion will also be denied. *See United States v. Waldrip*, 859 F.3d 446, 451 n.2 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived." (citing *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011))).

4) Plaintiff's motion for sanctions (dkt. #52) is DENIED.

5) Plaintiff's motion for assistance in recruiting counsel (dkt. #55) is DENIED WITHOUT PREJUDICE.

6) Plaintiff's motion for contempt of court (dkt. #59) is DENIED.

7) Plaintiff's motion for leave to file a reply on his motion for contempt of court (dkt. #63) is DENIED.

Entered this 26th day of April, 2019.

                        BY THE COURT:

                        /s/
                        _____
                        WILLIAM M. CONLEY
                        District Judge